UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREA TUCKER                                          CIVIL ACTION

VERSUS                                                 No. 15-7133

UNITECH TRAINING ACADEMY,                              SECTION: "J"(2)
INC. ET AL.

## ORDER AND REASONS

Before the Court is a *Motion for Summary Judgment* **(Rec. Doc. 102)** submitted by Defendant, Unitech Training Academy, Inc. ("Unitech"). Plaintiff, Andrea Tucker, filed an out-of-time opposition (Rec. Doc. 115) to which Defendant replied (Rec. Doc. 121). The docket reflects that after Plaintiff filed her untimely opposition, Plaintiff asked for an extension of time to file opposition. The Court granted Plaintiff until January 9, 2019, to do so. Plaintiff then filed a second opposition with accompanying exhibits. (Rec. Doc. 122). Having considered the Motion, the memoranda, the record, and the law, the Court finds that the Motion should be **GRANTED**.

## FACTS AND PROCEDURAL BACKGROUND

The central dispute in this case is a wrongful termination claim brought by an administrative medical assistant instructor against her employer, Unitech. Plaintiff began teaching at Unitech on August 18, 2014. Before joining Unitech, Plaintiff advised Defendant that she would need to take off time in late August for a gastric bypass surgery she had already scheduled. Ms. Tucker weighed 390 pounds at the

1

time. Plaintiff had the bypass surgery on August 29, 2014, and she was back to work on September 2, 2014.[1] It is undisputed that at the time Plaintiff was hired, all parties were unconcerned that Ms. Tucker's weight or her surgery would affect her job performance.[2]

Plaintiff suggests that her weight did limit her ability to perform her job later, however, due the conduct of her supervisors. Plaintiff's complaint is not a model of clarity, but the Court understands Plaintiff to allege that she stopped receiving ink for the printer in her classroom, which made it necessary for Plaintiff to retrieve printed classroom materials from a printing room in another part of her building. When the elevators at Unitech's campus stopped working for an unspecified amount of time, Plaintiff was required to walk up and down several flights of stairs multiple times a day. Due to Plaintiff's obesity, she alleges she had to take multiple breaks in the stairwell to catch her breath as she traveled to and from the printing room. Plaintiff alleges these trips caused her severe pain and cut into the time she was supposed be teaching her class.[3] She claims she complained to Unitech's Campus Director, Michelle Hammothe, that she needed ink for the printer in her classroom, but her request was denied.[4] This denial evidently led Plaintiff to begin communicating with Unitech's IT personnel, from whom Plaintiff alleges she learned

---

[1] (Rec. Doc. 66 at 4).
[2] (Rec. Doc. 66 at 3).
[3] (Rec. Doc. 66 at 5).
[4] (Rec. Doc. 66 at 5).

2

that a glitch in the academy's software was causing students to be marked as "graduated" without completion of all the modules in the curriculum.[5]

Plaintiff fails to attach specific dates to most of her allegations, but she does allege that in January of 2015, a corporate representative of Unitech came to her classroom to address her complaints regarding the printing situation as well as students' complaints regarding the software that the students used to complete the modules. Plaintiff alleges this unnamed representative advised Plaintiff and her class that Unitech had sufficient funds for ink and allegedly ordered "the Director,"[6] who was also present, to purchase ink for the classroom.[7] On January 23, 2015, after a conference between Michelle Hammothe and Unitech's Director of Education, Alana Farrazin, Plaintiff was terminated.[8] Plaintiff claims in her amended complaint that her termination was an act of retaliation by Hammothe and Sarrazin for reporting their scheme to embezzle funds from Unitech that had been appropriated by the school for supplies—ink, the Court presumes.

Plaintiff filed this suit on December 28, 2015. Plaintiff alleges claims pursuant to Title VII, the Americans with Disabilities Act, 42 U.S.C. § 1983, 42 U.S.C. § 1986, as well as various state law claims for wrongful termination and intentional infliction of emotional distress.

---

[5] (Rec. Doc. 66 at 6).
[6] Ambiguity pervades Plaintiff's complaint. Plaintiff references both Unitech's Campus Director and a Director of Education in her complaint. It is unclear whom Plaintiff alleges was ordered to purchase more ink.
[7] (Rec. Doc. 66 at 6-7).
[8] (Rec. Doc. 66 at 7).

3

## STANDARD OF LAW

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, a court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but a party cannot defeat summary judgment with conclusory allegations or unsubstantiated assertions. *Little*, 37 F.3d at 1075. A court ultimately must be satisfied that "a reasonable jury could not return a verdict for the nonmoving party." *Delta*, 530 F.3d at 399.

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991). The nonmoving party can then defeat the motion by either countering with sufficient evidence of its own, or "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id*. at 1265.

4

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings but must identify specific facts that establish a genuine issue for trial. *See, e.g., id.* at 325, *Little*, 37 F.3d at 1075.

## **DISCUSSION**

Although Plaintiff alleges many different causes of action, the underlying allegation that drives this litigation is that Plaintiff's Unitech supervisors fired her as retaliation for asking for ink for the printer in her classroom. This is a federal case, says Plaintiff, because the ink was a necessary accommodation of her disability. She is disabled by her obesity, she says, because she becomes winded when traveling up and down flights of stairs.

Plaintiff confuses things a bit by positing other motivations for retaliation by her supervisors. She claims her decision to ask for more printer's ink uncovered a scheme by Hammothe and Sarrazin to defraud the school of its ink money. She also suggests they fired her out of revenge for reporting software issues to Unitech's corporate officers. Plaintiff provides absolutely no evidence of these allegations and she admits in her deposition testimony that they are based on "pure speculation."[9]

---

[9] (Rec. Doc. 102-2 at 41).

5

Summary judgment is appropriate on any claim based upon these unsupported allegations.

## I. PLAINTIFF'S TITLE VII AND ADA CLAIMS

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2. Plaintiffs who wish to bring claims pursuant to Title VII in federal court must first exhaust administrative remedies with the EEOC or its state or local counterpart. *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). The rights of the disabled are protected primarily under another act, the Americans with Disabilities Act ("ADA"). 42 U.S.C. §§ 12101–12213. However, because "the ADA incorporates by reference the procedures applicable to actions under Title VII," an employee must also file a "charge with the EEOC or with a state or local agency" before proceeding to federal court with an ADA claim. *Dao v. Auchan Hypermarket*, 96 F.3d 787, 789 (5th Cir. 1996).

In her charge, filed timely with the EEOC, Plaintiff marked only the box for "retaliation." She did not indicate with any of the checkmark boxes that she was discriminated against on any basis, including disability. While Plaintiff clearly did not exhaust any claims of discrimination on the basis of sex, race, religion, or national origin—the Court is not willing to go along with Defendant's suggestion that she is precluded from asserting a disability discrimination claim merely because she left a box unchecked on her charge.[10] *See Sanchez v. Standard Brands, Inc.*, 431 F.2d 455,

---

[10] The Court agrees with Defendant that Plaintiff freely admits in deposition that she does not believe she was discriminated on the basis of gender or sex. (*See* Rec. Doc. 122-6 at 26). However, Defendant mischaracterizes Plaintiff's admission that she did not mark box for disability discrimination in her

6

462 (5th Cir. 1970) ("[T]he selection of which box to check, is in reality nothing more than the attachment of a legal conclusion to the facts alleged."). What is problematic is that the Court does not see in the record Plaintiff's supplemental complaint to the EEOC, where Plaintiff supposedly included an addendum to her factual statement indicating she asked for accommodation for her claimed disability. Plaintiff's initial charge does not mention disability whatsoever. Rather, in her original factual statement she states she has been retaliated against for reporting her students' grievances regarding class materials to Unitech. However, the Court assumes arguendo that Plaintiff exhausted her retaliation and disability claims because even if Plaintiff has met exhaustion requirements, summary judgment is still appropriate.[11]

As hinted at above, Plaintiff does not assert a viable Title VII claim. She does not claim she was discriminated on any basis prohibited by Title VII: race, color, religion, sex, or national origin. She does claim she was retaliated against, but not for engaging in any activity protected by Title VII.[12] Title VII prohibits retaliation against employees for opposing "any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3. Title VII does not prohibit retaliating against an employee for reporting *any* unlawful activity, such as the "defalcation of funds."[13] Plaintiff's Title VII claim is subject to summary judgment.

---

charge as an admission that she was not discriminated against based on a disability. (*See* Rec. Doc. 122-6 at 26, 38).
[11] Whether or not Plaintiff properly exhausted her claims, the Court has jurisdiction to hear them. *See Taylor*, 296 F.3d at 379.
[12] (*See, e.g.*, Rec. Doc. 66 at 9) (claiming she was retaliated against for complaining of being made to take the stairs, which winded her).
[13] (Rec. Doc. 66 at 7).

7

Plaintiff's disability discrimination claim is similarly doomed, though, for the reason that Plaintiff is not disabled under the Act. The first step in establishing a prima facie case of discrimination is establishing that the plaintiff suffers from a disability. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). The ADA provides three alternative definitions for "disability":

> (A) a physical or mental impairment that substantially limits one or more major life activities of such individual;
> (B) a record of such an impairment; or
> (C) being regarded as having such an impairment (as described in paragraph (3)).

42 U.S.C. § 12102. Accepting that Plaintiff's obesity constituted an impairment, Plaintiff must still prove that her obesity "substantially limits a major life activity." *Ellison v. Software Spectrum, Inc.*, 85 F.3d 187, 190 (5th Cir. 1996). The only problems that Plaintiff says she experienced due to her obesity was that she suffered "severe pain and shortness of breath" when traveling up and down stairs to use a printer room several stories below her classroom.[14] She had to do this occasionally—up to several times a day when the elevators were out and she had to print multiple things for her class.[15] While breathing is a major life activity, climbing stairs is not. *See Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 n. 2 (5th Cir. 1996). In *Robinson v. Glob. Marine Drilling Co.*, 101 F.3d 35, 37 (5th Cir. 1996), the Fifth Circuit held: "Several instances of shortness of breath when climbing stairs do not rise to the level of substantially limiting the major life activity of breathing." As in *Robinson*, Plaintiff offers no expert medical testimony and the only evidence

---

[14] (Rec. Doc. 66 at 5).
[15] (Rec. Doc. 66 at 5).

8

regarding her impairment and its effects comes from the Plaintiff. *Id.* Plaintiff's unsupported assertion that she suffered an unspecified "severe pain" while climbing stairs does not distinguish this case from *Robinson* either. Pain, even severe pain, which periodically hinders movement does not render an individual disabled for purposes of the ADA. *See Turner v. The Saloon, Ltd.*, 595 F.3d 679, 689 (7th Cir. 2010) (finding summary judgment was appropriate against plaintiff whose psoriasis periodically caused him severe pain and reduced his gait to a limp). And Plaintiff's own testimony that she can maintain a brisk walk despite her obesity undercuts her assertion that her movement is substantially limited.[16] Nor is Plaintiff disabled under an alternative definition. There is no record of "such an impairment" or evidence she was "regarded as having such an impairment." *See Robinson*, 101 F.3d at 37. Summary judgment is appropriate on Plaintiff's claim that she was discriminated against on the basis of disability.

Plaintiff's ADA retaliation claim is not necessarily defeated because she is not disabled. *See* 42 U.S.C. § 12203(a). Rather, she may still prevail if she can show "a reasonable, good faith belief that the statute has been violated." *Tabatchnik v. Cont'l Airlines*, 262 F. App'x 674, 676 (5th Cir. 2008). "To establish a prima facie case of retaliation under the ADA . . . a plaintiff must show that (1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*,

---

[16] (Rec. Doc. 102-2 at 20).

9

730 F.3d 450, 454 (5th Cir. 2013).

Regarding the first element, Plaintiff alleges she requested ink for her classroom printer so that she would not have to walk downstairs to the centralized printing room and that this constituted a request for an accommodation under the ADA. "[M]aking a request for a reasonable accommodation under the ADA may constitute engaging in a protected activity." *Tabatchnik*, 262 F. App'x 676. However, the reasonable accommodation must be for a "*known* physical or mental limitation of an otherwise qualified individual with a disability." *Id.* (emphasis changed) (quoting 42 U.S.C. § 12112(b)(5)(A)). According to her own deposition testimony, Plaintiff requested ink from multiple persons at Unitech. However, she admits that she never told anyone that going up and down the stairs was causing her physical pain or shortness of breath.[17] Thus, Plaintiff has no good faith basis for asserting she was perceived as disabled. *Id.* at 677. As the Court discussed above, Unitech was aware that Plaintiff was obese and had undergone bariatric surgery, but that was not sufficient for anyone to objectively conclude that Plaintiff's impairment substantially limited any major life activity. Plaintiff has failed set forth the first element of a retaliation claim; summary judgment is therefore appropriate.

**II.  PLAINTIFF'S CLAIMS PURSUANT TO LA. CIV. CODE ARTS. 2315, 2316**

Plaintiff also asserts claims pursuant to La. Civ. Code arts. 2315, 2316. She alleges that she "suffered damages from being wrongfully discharged by Unitech at the arbitrary and capricious decision of Michell Hammothe and Alana Sarazin."[18]

---

[17] (Rec. Doc. 122-6 at 30).
[18] (Rec. Doc. 122-10 at 13).

"Louisiana law allows employers to discharge employees without cause." *Guillory v. St. Landry Par. Police Jury*, 802 F.2d 822, 826 (5th Cir. 1986) (citing La. Civ. Code art. 2747). The discretion of employers is not without limit though. "Article 2315 forbids one to discharge an employee in violation of the Louisiana Constitution or the Federal Constitution or statutes." *Id.* (citing Gil v. *Metal Service Corp.*, 412 So.2d 706, 708 (La. App. 4th Cir. 1982)). Nevertheless, as the Court concluded above, Defendant did not violate Plaintiff's constitutional or statutory rights; therefore, summary judgment is appropriate. *See id.*[19]

### III. PLAINTIFF'S REMAINING CLAIMS

The Court will briefly run through the allegations that Plaintiff alleged in her complaint but did not oppose Defendant's motion for summary judgment on. Plaintiff cannot recover against Unitech under 42 U.S.C. § 1983 because Unitech is a private business entity and was not acting under color of state law. Plaintiff also alleges Defendant violated 42 U.SC. § 1986, but she provides no evidence of Unitech's involvement in a conspiracy to violate her civil rights. Indeed, as discussed at length, she fails to show anyone violated her civil rights. Finally, Plaintiff's intentional infliction of emotional distress claim fails because she has not demonstrated with competent summary judgment evidence that she has suffered "genuine and serious mental distress." *Bonnette v. Conoco, Inc.*, 837 So.2d 1219, 1236 (La. 2003).

---

[19] Plaintiff attempt to frame her wrongful termination claim as an act by Hammothe and Sarrazin, for which Unitech is vicariously liable, is a non-starter. Plaintiff named these individuals as defendants and the Court granted summary judgment for each of them. (Rec. Doc. 76).

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the *Motion for Summary Judgment* **(Rec. Doc. 102)** is **GRANTED.**

**New Orleans, Louisiana, this 18th day of January, 2019.**

_____
CARL J. BARBIER
UNITED STATES DISTRICT JUDGE